UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



NOVELLA MARIE SWANSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**DECISION AND ORDER**

1:18-CV-00870 EAW

## **INTRODUCTION**

Represented by counsel, plaintiff Novella Marie Swanson ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 10; Dkt. 14). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is denied and the Commissioner's motion (Dkt. 14) is granted.

## BACKGROUND

Plaintiff protectively filed her application for SSI on February 18, 2015. (Dkt. 7 at 15, 108).[1] In her application, Plaintiff alleged disability beginning on January 25, 2014, due to: stroke; mitral valve disorder; psychotic disorder; atherosclerosis aorta; occlusion cerebral artery with cerebral infraction; hyperlipidemia; hypertension; and borderline intellectual functioning. (*Id.* at 109). Plaintiff's application was initially denied on June 2, 2015. (*Id.* at 127-30). At Plaintiff's request, a hearing was held on May 15, 2017, in Buffalo, New York, before administrative law judge ("ALJ") Stephen Cordovani. (*Id.* at 37-79). On July 10, 2017, the ALJ issued an unfavorable decision. (*Id.* at 12-36). Plaintiff requested Appeals Council review; her request was denied on June 6, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 18, 2015, the SSI application filing date. (Dkt. 7 at 17).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: right internal carotid artery occlusion with right middle cerebral artery cerebrovascular accident with resultant deficits; borderline intellectual functioning; and major depressive disorder with psychotic features. (*Id.*). The ALJ also found Plaintiff had been "medically managed" for: status post stroke; arthritis; sciatica; knee pain; sinusitis; allergic rhinitis; dermatitis; otitis media; sleep disturbance; insomnia; fatigue; anemia; vitamin deficiencies; elevated liver enzymes; constipation; abdominal pain; hypertension; hyperlipidemia; chest pain; mitral valve disorder; atherosclerosis aorta; dyspnea; tobacco use disorder; smoking cessation; and history of poly-substance abuse. (*Id.* at 18). The ALJ concluded there was insufficient "documentation to show these conditions [rose] to the level of a severe impairment." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). In particular, the ALJ considered the requirements of Listings 11.04, 12.02, 12.03, 12.04, 12.05, and 12.06 in reaching his conclusion. (*Id.* at 18-21).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations that Plaintiff:

> is unable to kneel, crouch, crawl, or climb ladders, ropes, and scaffolds. She is occasionally able to bend and climb ramps and stairs. [Plaintiff] is unable to work at unprotected heights, but she is occasionally able to push and pull with the left, non-dominant arm. [Plaintiff] is occasionally able to handle and finger with the left hand, but she is unable to engage in overhead work with the left arm. In addition, [Plaintiff] is able to understand, remember, and carry out simple instructions and tasks. [Plaintiff's] work instructions

must be provided orally or by demonstration, and she is able to work in a low-stress environment, which is defined as an environment with no supervisory duties, no independent decision-making required, no strict production quotas, and minimal changes in work routine and processes. [Plaintiff] is able to engage in frequent interaction with supervisors, co-workers, and the public.

(*Id.* at 22). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of sitting room attendant, ticket taker, and parking lot cashier. (*Id.* at 28-29). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time since the date Plaintiff's application for SSI was filed. (*Id.* at 29).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner. Plaintiff argues the ALJ's RFC assessment is not supported by substantial evidence because it does not adequately account for Plaintiff's limitations as identified by Dr. Rajinder Bajwa and Dr. Janine Ippolito. (Dkt. 10-1 at 13-15). Plaintiff's assertion is not supported by the record.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that "an ALJ may not substitute his own judgment for competent medical opinion." This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion in the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

In assessing Plaintiff's RFC, the ALJ gave "significant weight" to the opinions of Dr. Ippolito due to her expertise and the opinion's relative consistency with the overall evidence, and of Dr. Bajwa "due to his expertise, his treating relationship with the claimant, and the relative consistency of his opinions with each other" and with the overall evidence. (*Id.* at 26-27). The ALJ's RFC assessment, in relevant part, provides:

> [Plaintiff] is able to understand, remember, and carry out simple instructions and tasks. [Plaintiff's] work instructions must be provided orally or by demonstration, and she is able to work in a low-stress environment, which is defined as an environment with no supervisory duties, no independent decision-making required, no strict production quotas, and minimal changes in work routine and processes. [Plaintiff] is able to engage in frequent interaction with supervisors, co-workers, and the public.

(*Id.* at 22).

The RFC assessment is adequately supported by the record, and it is clear to the Court how the ALJ arrived at the assessed RFC. For example, the RFC assessment limits Plaintiff to work with simple tasks and minimal changes in work routine and processes. This limitation sufficiently accounts for Dr. Bajwa's opinion that Plaintiff was moderately limited in the ability to understand, remember, carry out instructions, and maintain attention and concentration, and was markedly limited in the ability to function at a consistent pace. *See Broadbent v. Saul*, No. 3:18-cv-02127(WIG), 2019 WL 4295328, at *5 (D. Conn. Sept. 11, 2019) (RFC limiting the plaintiff to simple tasks sufficiently accounted for the plaintiff's "difficulties with concentration, persistence, and pace"); *Williams v. Colvin*, 98 F. Supp. 3d 614, 633 (W.D.N.Y. 2015) (RFC limiting the plaintiff to simple tasks was consistent with medical opinions that the plaintiff "had mild to moderate limitations with regard to concentration, persistence, or pace").

Additionally, the RFC limits Plaintiff to work in a "low-stress environment, which is defined as an environment with no supervisory duties, no independent decision-making required, no strict production quotas and minimal changes in work routine and processes." (Dkt. 7 at 22). This limitation adequately accounts for Dr. Ippolito's opinion that Plaintiff was markedly limited in dealing with stress. *See Uplinger v. Berryhill*, No. 18-CV-481-HKS, 2019 WL 4673437, at *7 (W.D.N.Y. Sept. 25, 2019) (ALJ's RFC assessment appropriately incorporated the plaintiff's marked limitations in dealing with stress where the plaintiff was limited "to work in a low stress environment reflected by simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes"); *Miller v.*

- 8 -

*Berryhill*, No. 6:16-cv-06467(MAT), 2017 WL 4173357, at *6 (W.D.N.Y. Sept. 20, 2017) (ALJ's RFC assessment appropriately accounted for the plaintiff's marked limitations in dealing with stress where the plaintiff was limited, in part, to unskilled work "that does not require her to meet hourly production rates, such [as] machine-driven assembly-line work," and work "involv[ing] only occasional changes in the work environment, that require her to make only occasional work-related decisions and judgments"). Further, the RFC assessment limiting Plaintiff to work with no supervisory duties and no independent decision-making also sufficiently accounted for Dr. Ippolito's opinion that Plaintiff was moderately limited in making appropriate decisions.

Plaintiff also argues the ALJ's RFC assessment is unsupported by substantial evidence because it did not include time off-task. (Dkt. 10-1 at 14-15). Plaintiff cites the VE's testimony that an employer would terminate a worker at the unskilled level of work "who is off-task 15 percent or more of the day," and summarily argues [Plaintiff's] "marked inability to function in a work setting along with the moderate limitation to maintain attention and concentration" "will no doubt limit [her] ability to stay on-task throughout the workday and workweek." (*Id.*). However, there is no medical opinion or other evidence in the record to suggest that Plaintiff's limitations would cause Plaintiff to be off-task 15 percent or more of the day. As such, Plaintiff's argument is wholly speculative. *Cf. Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (upholding ALJ's determination that opinion regarding

Plaintiff's need for off-task time was speculative where it was unsupported by the medical record).

Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that Plaintiff failed to meet her burden in this case. As discussed above, when assessing the RFC, the ALJ's conclusion need not "perfectly correspond with any of the opinions of the medical sources cited in his decision." *Matta*, 508 F. App'x at 56. The RFC assessment in this case is consistent with the limitations identified by Dr. Bajwa and Dr. Ippolito and, thus, the RFC assessment is supported by substantial evidence. Accordingly, neither reversal nor remand is warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 21, 2020
Rochester, New York